Sehija KUKAJ, Arnoli Kukaj,
Petitioners,

v.

Alberto R. GONZALES, Respondent.

No. 05–2497–ag.

United States Court of Appeals,
Second Circuit.

March 9, 2007.

58

Gregory Marotta, Law Office of Richard Tarzia, Belle Mead, NJ, for Petitioner.

Kevin J. Mikolashek, Assistant United States Attorney (Chuck Rosenberg, United States Attorney for the Eastern District of Virginia, on the brief), Alexandria, VA, for Respondent.

Present: Hon. AMALYA L. KEARSE and Hon. SONIA SOTOMAYOR, Circuit Judges, and Hon. MIRIAM GOLDMAN CEDARBAUM, District Judge.*

---

* Honorable Miriam Goldman Cedarbaum, of the United States District Court for the South-

*SUMMARY ORDER*

Sehija Kukaj ("Kukaj") and her minor son Arnoli, citizens of the former state of Serbia and Montenegro (hereinafter "Montenegro"), petition for review of the April 28, 2005 order of the BIA affirming the April 2, 2004 decision of Immigration Judge ("IJ") Joanna Miller Bukszpan, which denied their applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"), *see In re Sehija Kukaj and Arnoli Kukaj*, Nos. A 97 646 323, A 97 646 324 (B.I.A. Apr. 28, 2005), *aff'g* Nos. A 97 646 323, A 97 646 324 (Immig. Ct. N.Y. City Apr. 2, 2004). On this petition for review, petitioners contend principally that the IJ erred in failing to consider events that occurred prior to 1992. We assume the parties' familiarity with the underlying facts and procedural history.

Where, as here, the BIA has summarily adopted or affirmed the IJ's decision without opinion, this Court reviews the IJ's decision. *See, e.g., Twum v. INS*, 411 F.3d 54, 58 (2d Cir.2005). While we review the IJ's rulings of law *de novo, see Ramsameachire v. Ashcroft*, 357 F.3d 169, 178 (2d Cir.2004), we review the factual findings under the substantial evidence standard, sustaining findings that are "supported by reasonable, substantial, and probative evidence in the record when considered as a whole," *Secaida–Rosales v. INS*, 331 F.3d 297, 307 (2d Cir.2003) (internal quotation marks omitted). "Under this standard, the IJ's factual determinations may be overturned only if 'any reasonable adjudicator would be compelled to conclude to the contrary.'" *Diallo v. Gonzales*, 445 F.3d 624, 628 (2d Cir.2006) (quoting 8 U.S.C. § 1252(b)(4)(B)); see, *e.g., Jin Hui Gao v. United States Attorney General*,

ern District of New York, sitting by designation.

400 F.3d 963, 964 (2d Cir.2005); *Zhou Yun Zhang v. INS,* 386 F.3d 66, 73 (2d Cir. 2004).

■ Preliminarily, we note that the state of the record before us is somewhat troubling. In particular, there is a gap in the transcript following an off-the-record discussion during the government's cross-examination of Kukaj. The IJ noted that she had failed to reactivate the tape recorder; but the record is silent both as to the length of time during which the proceedings were not recorded and as to what was said during that time that should have been on the record. However, as petitioners were represented by counsel at the hearing and made no request that such information be stated or summarized on the record, and as counsel representing petitioners in this Court has not suggested that any material information was omitted from the record, we conclude that the gap in the record is harmless. We thus turn to the merits of the petition.

Kukaj contends principally that in refusing to allow her to testify to alleged incidents of mistreatment that occurred prior to 1992, the year in which she and her husband moved to Sweden, the IJ erred in assuming, without evidence, that she had received an offer of permanent resettlement in Sweden, *see generally* 8 U.S.C. § 1158(b)(2)(A)(vi) (Attorney General not authorized to grant asylum if "the alien was firmly resettled in another country prior to arriving in the United States"). This argument mischaracterizes the IJ's rationale for excluding Kukaj's evidence of pre–1992 incidents. The IJ, while using the term "safe haven" in a somewhat loose sense, did not suggest that Kukaj had resettled permanently in Sweden. Rather, the IJ considered Kukaj's statements and actions, with regard to Kukaj's return to Montenegro in 1994, to indicate that "any concerns that [Kukaj] had as to persecution" based on the pre–1992 incidents were diminished. The IJ stated that any claims of persecution Kukaj may have had with respect to the period prior to 1992 "were waived by her *when she returned to Montenegro* after [the] two-year safe-haven" (emphasis added). The IJ's view was supported by Kukaj's statement in her asylum application that she and her husband moved back to Montenegro from Sweden in 1994 "because it was there that we were willing to live and raise our children." The basis of the IJ's refusal to consider pre–1992 events thus was not that Kukaj had permanently resettled in Sweden in 1992, but rather that she was willing to return to Montenegro in 1994 and live there despite the pre–1992 events.

■ We note that an IJ, in assessing past persecution alleged in connection with an asylum application, is required to view incidents of mistreatment in the aggregate. *See, e.g., Edimo–Doualla v. Gonzales,* 464 F.3d 276, 283 (2d Cir.2006) ("A series of incidents of mistreatment may together rise to the level of persecution even if each incident taken alone does not."); *Poradisova v. Gonzales,* 420 F.3d 70, 80 (2d Cir.2005) ("[w]here no single incident stands out above the others, sometimes a small incident may be 'the last straw' " (quoting Office of the United Nations High Commissioner for Refugees, *Handbook on Procedures and Criteria for Determining Refugee Status Under the 1951 Convention and the 1967 Protocol Relating to the Status of Refugees* (Geneva 1992))). And if evidence had been presented that upon her return to Montenegro in 1994 Kukaj had been subjected to further mistreatment, we would likely find the IJ's refusal to consider the pre–1992 incidents to be error sufficient to require a remand. However, the parties had stipulated that Kukaj was collaterally estopped from claiming past persecution on the basis of incidents that occurred between 1992 and 2000, and hence Kukaj presented no evidence at her hearing as to incidents during

the six years immediately following her return to Montenegro.

Further, Kukaj not only returned to Montenegro; she remained there until she departed for the United States in 2002. We cannot conclude that any rational fact-finder would be compelled to conclude that the events prior to 1992 were significant, given Kukaj's return to Montenegro two years thereafter, her remaining in Montenegro for eight years after her return, and the absence of any evidence of incidents in the first six of those years.

■ Finally, in assessing Kukaj's claim of future persecution, the IJ properly took into account both "the particular circumstances of the applicant's case," *Tambadou v. Gonzales*, 446 F.3d 298, 302 (2d Cir. 2006), and the principle that the reasonableness of an applicant's fear of future persecution is diminished when the applicant has family members who remain in the native country unharmed, *see In re A–E–M–*, 21 I. & N. Dec. 1157, 1160 (BIA 1998). In addition to the fact that after the initial claimed persecution in 1992, largely occasioned by her husband's avoidance of the draft, Kukaj and her husband returned to Montenegro in 1994 because they wanted to live there and raise their children there, and remained there for more than half a decade, the IJ took into account the fact that a law had been passed granting amnesty to draft avoiders. Because Kukaj's husband's avoidance of the draft had been the catalyst for many of the incidents alleged in support of her asylum application, the negation of that concern, given the amnesty law, supports an inference that the threat of future persecution based on Kukaj's husband's refusal to serve in the army has been significantly diminished.

The IJ also took into account (a) the fact that when Kukaj left Montenegro in 2002, she left two of her children in Kosovo-including the daughter who was allegedly slapped by the police during an incident that was one of the bases of Kukaj's asylum application-and (b) the absence of any evidence that the two Kukaj children remaining in Kosovo have been persecuted or harassed by the authorities. There was no evidence that Kukaj had attempted to move those children to other countries where Kukaj has relatives lawfully residing. The IJ found that Kukaj's decision to leave her children in Kosovo when she departed for the United States indicated that she had no fear of persecution "in that part of the world." We cannot conclude, given Kukaj's actions, that any rational factfinder would be compelled to find that she fears those children will be persecuted.

We have considered all of petitioners' contentions in support of their petition for review and, for the reasons stated above, have found no basis for a remand. The petition for review is denied.

■ We note, however, that respondents have been ordered removed to "Serbia & Montenegro," and that since the issuance of the order of removal, Serbia and Montenegro have become countries independent of each other, *see* U.S. Dep't of State, *Background Note: Montenegro* (Feb.2007), *available at* http://www.state.gov/r/pa/ei/bgn/70949.htm; U.S. Dep't of State, *Background Note: Serbia* (Oct. 2006), *available at* http://www.state.gov/r/pa/ei/bgn/5388.htm. *See also id.* (Kosovo, "[w]hile legally still part of Serbia, ... remains an international protectorate of the United Nations"). Accordingly, we remand the matter to the BIA for clarification of the removal order to specify the country to which petitioners are to be removed.

Petitioners' pending motion for a stay of removal is denied as moot.